the case please introduce yourself to the court. Good morning, your honor. Michelle Katz for the approval. And good morning. Kathy Doyle on behalf of Chicago Public Media and I'll be presenting on behalf of all of the appellant media interveners. Okay, and do you need any time for rebuttal? If I could have five minutes, please. That'd be fine. Let's proceed. May it please the court. This case arose out of a very painful incident in our community. The murder of Mr. Laquan McDonald by former Chicago police officer Jason Van Dyke. We're proud this morning to represent the public's interest today in asking your honors to uphold the protections guaranteed to them by the First Amendment. So this morning I would like to discuss three issues. The first two are narrow but important and they speak to the relief that we're requesting. Number one, that it was error for a decorum order, which is essentially a gag order, to survive beyond the close of trial, especially without any findings justifying such a restraint. And number two, that it was error to withhold from the public public dispositive motions or portions of those dispositive motions that address some of the state's attempts to persuade you to avoid deciding those issues. Let me ask you a question right off the bat. What is our standard of review here? There's a bifurcated standard of review. The question on whether or not the constitutional presumptions of excess apply is decided on a de novo standard. And then as to the findings, whether that the findings of fact, whether that presumption has been overcome by the circumstances in this case, is the abuse of discretion review. Okay, now on the abuse of discretion review, that means we have to find that no reasonable judge would have done what this trial judge did. Is that correct? Well, I believe that as we go through what occurred here, I think you will have that conclusion at the end of this morning. And if I may begin with the decorum order itself. This was one of the first actions that was taken by this court, by the court on January 20 of 2016. Let me ask you, why is it? Why shouldn't your first claim that is, we consider the denial of the Smith motion intervening and vacate be considered untimely on the Supreme Court Rule 607? Well, Your Honor, we are appealing the order of May 23 2019. That's the final order that was issued by by the circuit court disposing of our of our issues, including our request to vacate the decorum order post trial. And as I mentioned, this is again, post trial. So on October 5 of 2018, that was when the jury had returned its verdict against Mr. Van Dyke. But as we'll discuss, the gag order continued to interfere with the flow of information from that case. So as a prior restraint on suite on a prior restraint on speech, the Illinois Supreme Court in Kemner versus Monsanto has described this as the most serious and least tolerable infringement of First Amendment rights. So there's a heavy presumption against its validity that needs to be overcome by specific findings here. Well, here, let me ask you this. What you're looking for here is a redrafted transcript before the grand jury. Is that what you're looking for? Your Honor, where there are two issues that I'd like to discuss separately. In this case, one of the issues relates to redactions on substantive motions, dispositive motions to dismiss. I can't say exactly what's behind those black boxes, and I would like to discuss those in a little bit more detail in a moment. But that is one of the issues. There may be grand jury material in there. But I'd like to discuss in more detail what's going on there. The second issue that's going on as well. Why isn't that issue removed since the requested documents were released with redactions pursuant to your April 10, 2019 argument for the trial court in which you requested release with redaction? What has changed? Well, the offer of a possible release of redactions was an interim measure before receiving the full public documents. We still do not have the full documents. And if we'd like to discuss those first, if I could draw your attention, for example, I am looking at the People's Combined Response to the Defendant's Motion to Dismiss the Indictment and Motion to Dismiss the Indictment or Other Relief. This is found in the record at Supplemental Record C90. This is just an example of one of the documents that had been under seal throughout the pendency of the case, post-trial, post the filing of our Notice of Appeal, actually. It was completely under seal, including pages and pages of legal argument and so on. What remains under redacted form, and again, this happened after we were, after we had filed our Notice of Appeal, you will see I'm holding up here, this is Supplemental Record, page C108. As another example, I've got C114. There are still these black box redactions that I can't tell you the justification for. I don't know why the redaction on page 108 is here versus the redaction on page 114. As far as a possible description of grand jury materials, I'll note that the record on, again, page 114 includes dialogue from the grand jury that is not redacted. You can go back if you have time to see in the middle here. This is a portion of what appears to be Q&A. This is a portion of what appears to be Q&A and is here and not redacted. I think that the question of why some material is redacted and why some is not has not been identified. So here, as I mentioned, there are two issues, one of which is the misconduct filings and the redactions that remain, but there's another issue as well, and that relates to the deporum order itself because it survived in this case post-trial. And when it was initially entered back in January of 2016, the court referred to it on the record at the Report of Proceedings R-318, referred to this as a deporum order that would be over the conduct of attorneys, referred to it as life insurance and as just protection, while noting that the attorneys were honorable people. However, and this is important to our issues today, the deporum order reaches beyond simply the conduct of attorneys and reaches to law enforcement employees of any agency involved in the case, person subpoenaed, or persons expected to testify. So what happened here is that post-trial, the Chicago Police Department refused to provide information in response to FOIA requests because they were concerned about running afoul of the still existing deporum order. So this included separate requests made by a third party journalist, as we've mentioned, Mr. Brandon Smith. It also included FOIA requests that were submitted by some of the media intervenors. So whatever possible justification at this point that there may have been for entering that deporum order in the first place, the balance of concerns by this time post-trial, after the jury had already been sent home, had clearly changed. And the court did not provide any specific findings justifying that blanket gag order, either at the outset of the case and certainly not post-trial. But this isn't the first time that this issue has come up in the trial court or in the appellate because you have a template in the Araceli case. In that case, you had the same trial judge as the judge in the Van Dyke case. You have basically the same deporum order that was approved on appeal. And then the Supreme Court approved of it and the vehicle from which to appeal it, Rule 307. And it just seems like you guys have ignored that. You're ignoring the template that's already been approved. Well, Your Honor, I'm not sure. I mean, the prior case in Araceli, first of all, there are similarities, yes, with the deporum order. And I certainly think that the precedent there was not followed in this case. How? How was it not followed? I don't think that the findings were required. Well, first, well, there were a few issues to discuss. First of all, there were no findings to justify why one would be necessary, why the deporum order would be necessary in this case at all. Also, again, this deporum order survived post-trial, which is, again, the subject of the appeal here, that it survived post-trial, that it continued to stop that flow of information that parties continue, non-parties actually, parties meaning third-party entities, were concerned about running afoul of the deporum order. And I want to note, too, just one thing that's important also is that during all this time of post-trial briefing regarding the deporum order, the state took position at that time that the deporum order did and should remain in effect. It opposed the motions. It even opposed some of the motions after this appeal, some motions brought by other parties. So months after we had initiated our appeal, the state then switched its position and then moved in September of 2019, or approximately around September of 2019, for the deporum order to be in effect. So we want to discuss some of the impacts of the procedural quirks here in a moment, but just first, I'd like to make the point that what happened in this case is so egregious that we're just asking for this court to issue a clear declaratory statement that this was an improper use of the trial court's power and control over this case. If you want us to do that, if you want us to do that, we have to have jurisdiction to hear that aspect of it. And in the R. Kelly case, it was made clear that it was Rule 307. The Supreme Court endorsed that in the Zimmerman case, I believe. How do you get us to have jurisdiction over that issue here? Right, well, so both the state and we have agreed that under Rule 303A that we have jurisdiction as the... That doesn't bind us. Okay, it doesn't. We still have to, you know, make sure that we have jurisdiction despite what the parties might think. Well, and under the rule, I mean, again, I assert that we do have that jurisdiction under 303A and that we appealed from that May of 2019 order in time as a post-trial motion. That was our final judgment. And if I may continue, one of the other substantive issues before we dive more into some of the procedural issues is I did want to speak a little bit more about those misconduct filings and about the redactions in addition to the deform order. So again, what these are is that early in the case, in the pretrial proceedings, the defendant moved to dismiss and those motions, which are dispositive motions that were contested and were ruled upon, were sealed from the public, again, post-trial throughout the entire pendency of the case. And we're later... We have these redacted portions that I've shown you. Now, as this court knows, whether a presumption of access applies to documents, it's governed by the experience and logic test of the people versus Zimmerman. And here, these are publicly filed documents. We're not seeking the grand jury file. We're seeking the publicly filed motions to dismiss on this case. These are historically, traditionally available to the public as the Illinois Supreme Court has stated in Skolnick versus Altimer and Gray. The people... Litigation is a public exercise. Simply put, the people have a right to know about judicial proceedings. And they can only... These papers can only be withheld from the public in the most extraordinary cases. So as a comparison... Let me ask you this. Do you understand that in that motion to dismiss, that there was no evidence to support any of the allegations? Isn't that true? I understand that that is an argument that was made after the fact, not at the time of the sealing. And I don't believe, again, at the time of these specific redactions. I understand that the court came to that conclusion with these redactions. I can't personally test that. But either way, under Skolnick versus Altimer and Gray, the fact... And in Skolnick, for example, there was a counterclaim that the court, the Illinois Supreme Court, described as meritless and as a mere intimidation tactic. And even then, in private litigation, it was required to be shown to the public. Because again, litigation... Was that a grand jury... Exercise. Was that a grand jury proceeding? No, it was not related to a grand jury proceeding. But I think there are separate potential issues that were discussed by the court, again, not at the time, but after the fact, potential rationales. And there were three of them. One of them was the potential of grand jury proceedings. One of them was the potential that there was not a scintilla of evidence, that there was not sufficient evidence, which again, I think is disposed of pretty clearly by Skolnick versus Altimer and Gray. Another one is whether persons would be subject to possible embarrassment, which again, Skolnick disposes of that as well. And again, that was actually in a private case where even there, the possibility of the... But it wasn't a grand jury proceeding. There's special laws pertaining to grand jury proceedings that are not pertaining to other proceedings. Yes. You have to understand that there's quite a difference between the two. Right. So again, there are... I'm sorry, did I cut you off, Your Honor? No, no, that's all right. That's fine. You didn't cut me off. Go ahead. Proceed. Thank you. Again, there were three reasons. So I'm saying that Skolnick addressed, in my mind, two of those three reasons. The third reason, again, of a potential attempt to justification is the grand jury. So grand jury secrecy, though, is not absolute. So for example, a classic example would be if somebody is on the stand during trial and they say something that is counter to what they had testified to previously in front of the grand jury, one of the parties can bring that up to impeach the witness. So here, again, we're not seeking the release of the grand jury materials themselves. We're seeking the portions that were used in these dispositive motions that, again, were decided on by the court. And again, I note that... Well, weren't you, given those documents, the only thing that was testified and information that would show who they are? No, Your Honor. As I mentioned, this is all I have today. And I have other pages like this. I happen to have these two out. I'd be happy to show you or read off... No, I've seen them all. We have reviewed every single document. We looked at all of it. And so it is more than simply names. I assume that this is not entirely names, but it's more than names. And there are specific portions here where, for instance... Counsel, what, if anything, do you expect to uncover in the sealed file? Well, first of all, I don't know what's behind the black box. But again, we do know that these documents relate to potential prosecutorial misconduct. And the public has the right to know what's going on and what its public officials are doing. And so we want to be able to investigate and to test these claims. And what we're seeing here doesn't give us all of that information. There's some characterizations of what may or may not be behind these boxes. But again, I don't know these exact boxes are here. There has not been on the record any kind of redaction by redaction analysis to show what's going on here. And I also wanted to point out one other issue is that something that the state has argued in its response brief is that basically that the media and the public should be satisfied that we've received enough. And I think that speaks to your question of what's left, you know, behind these boxes. You know, the state has argued that other court filings or materials that we do have available, essentially contain the sum and substance of the sealed filings, which begs the question of what justification possibly remains for maintaining these documents in redacted form, or again, under seal as they used to be, if the sum and substance has already been disclosed. So for instance, in in Ray a minor, as the Illinois Supreme Court had noticed, had noted, it serves no purpose to shut the barn door when the horse has already fled. And we believe that that's happened here where we need to see the rest of this substantive information, the balance of concerns at this point has shifted. The trial is over, the jury has gone home, and it's time for us to be able to test these allegations of prosecutorial misconduct. And now also, I did, are you aware of any other case that with similar media interests that are similar to the quorum order has been issued and maintained? I apologize, I'm having a little bit of feedback. I didn't, were you asking if if I'm aware of other cases with the decorum order? Right. Similar media interest and whereas similar decorum order has been issued and maintained. Are you aware of any other case? My understanding and part of why we seek this clear declaration from you today is my understanding is that these similar decorum are being issued routinely pre-trial. And as far as post-trial, we have searched and I am not aware of another case that is upholding a decorum order such as this post-trial. I have not seen that. The state has not directed us to that in their response brief either. And the state actually devoted the majority of its response brief, not so much to the merits, but largely to some of these procedural issues. So we did discuss these in more detail in our reply brief. But I did want to touch on a few of them because I think again, that the state never really comes to grips with the guidance that this court has provided just loud and clear in the people versus R. Kelly. So for instance, regarding mootness, this appeal is not moot, even though the decorum order was lifted in September of 2019 after we had filed the notice of appeal. But as recognized in the people versus R. Kelly, the public interest exception and the capable of repetition yet evading review both apply here. And I think the fact that we are standing here today with a similar decorum order issued by the same judge as in that case, 10 minutes or 10 years later, just speaks to the this court's guidance before this recurs again. Do you want us to substitute our judgment for that of the trial court? Is that what you want us to do? Well, the, the, is this for, I apologize, what are you asking regarding the findings? I mean, I think that what we have here is that there have been no findings made. So I don't know the basis for, for holding, maintaining that decorum order post trial. I don't see what that basis could possibly be. And I think it's an abuse of discretion. Well, are you asking us to write something that a court must make a finding at that stage of the proceeding? Is that what you're telling us? Absolutely. I think that would be a great start. I think that, again, there must be findings to support the restraint. And what case supports that, that, that there must be findings. Do you have a case that says that? Yes. Under Kemner versus Monsanto, the findings are required. And the, and I would argue too, that post trial, there's such a shift in the concerns because the jury has gone home at that point. And it is such a shift. I mean, we're, sitting here today, we're now almost in 2021. Mr. Van Dyck's appeal, I understand has been dismissed at his own request. There is not going to be a new trial. And you know, there, this is something that the, the calculus changed very clearly the date that the jury went home. And that was error. And I think that whatever findings, even if there had been findings on the record, and even if those findings had been appropriate to justify the restraint in the first place, I find it very difficult to see the scenario where as a matter of course, the, the decorum order should simply survive. All right. So you don't believe there really needs to be findings then? Well, if there, if there is something particular and unique to the case that would justify that, I think that those findings should be made. Absolutely. But I, I don't think in the normal case, and certainly not in this case, I don't think that they were present. Besides the fact that I did not see them articulated in the record. And I think that, you know, that the, the merits of this case simply need to be addressed because the case was rife with errors from the outset, magnified again, when this trial ended two years ago now. So, you know, I asked this court to meet the issues head on to decide the issues and, you know, allow the public to view the, the dispositive motions that allege official misconduct. And to again, make a statement that there should not have been a decorum order that survived after the jury went home previously. So if you have any other questions, I'm certainly happy to take them. All right. Does any member of the panel have any other questions? None for me. Thank you. Let's hear from the state. Good morning, your honors. May it please the court, counsel. I'm assistant state's attorney, Michelle Katz on behalf of Joseph H. McMahon, who is the state's attorney of Kane County and was appointed special prosecutor in this matter. Jointly, we represent the people of the state of Illinois. This court is faced with two questions. And one has to do with the decorum order that was entered and maintained by Judge Gahn. The second issue has to do with the propriety of seven pleadings that remain subject to seal and have been released in redacted form. And here are the things that are not at issue in this case. There are countervailing very serious interests that are presented. We have the first amendment right, a fundamental, very strong right that also is a fair trial. And it's due process rights. And when a case of this, that draws this much media attention, and if we look back to the record from May 2nd of 2018, at that point in time alone, there were over 8,000 articles that were written about this case and millions of Google hits. So we know that this is a case that drew more media attention than any other case up until this time in this jurisdiction. I'm just curious, why is it that you agreed to release the doctor related to the grand jury proceedings even in redacted form when FOIA doesn't apply to grand jury proceedings? Because if a decision was made by the state's attorney that in order to that that balance could be fairly struck by releasing them in redacted form, it was always the intention of the state's attorney to comply to the extent possible. And the record bears this out with presenting as many pleadings as could be presented at the appropriate time to do so. Post-trial, post-sentencing, when the parties got together to discuss what needed to remain under seal and what didn't need to remain under seal, hundreds of documents were dispersed to the media. The only seven that remain under seal in unredacted form and released in redacted form are these seven. There was nothing that the state's attorney saw in the redacted versions that threatened the protection and the secrecy that's ensured to grand jury proceedings at that point in time. Now, when we look at the protective order itself and we look at whether or not the standard in either putting that decorum order in effect or maintaining that decorum order, there is a template that is now in place based on this court's instruction that was given in People v. Kelley. And the court made it very clear that the purpose of methodically going through that decorum order and what was appropriate in a media-intensive case, this was going to be providing guidance for future judges. It's the same judge, it's a media case, it's the same order. And while I'm not sure of the appellant's position, because to me they seem to vacillate between saying, no, we're not challenging the implementation of the order from its inception, we're just arguing about whether or not it should have been maintained. It seems to me that there is a complaint at the outset that there weren't specific findings that needed to be made to put this decorum order in place. The people wholeheartedly disagree. And this is the reason why. This reliance on the Kemner rule, that case has been upended by the Illinois Supreme Court's articulation of Rule 3.6 of the Rules of Professional Responsibility, which no longer required, first of all, Kemner was a rule that applied in civil cases. And it said, basically, that an attorney couldn't be prohibited from talking outside of a courtroom about a pending case unless there were clearly articulated reasons made by the trial court that justified them from being prevented from doing so. The Illinois Rule of Professional Responsibility came in after that decision. And it was a response to that. And what it did was it put a duty on every attorney in every trial that the type of behavior, behavior which incidentally was occurring before the decorum order was put in place. As early as 12-17-15, I've provided the record for this court that shows that defense counsel was having wholesale conversations with the media about things that are specifically prohibited by the rule. So this record itself, the people's position is twofold. One, when you have the circumstances that you have in this case or in any case that's drawing major national media recognition, that the provisions, the decorum order that was utilized in Kelly that was utilized in this case are triggered. And you don't have to have specific findings. That's buttressed by the fact that the Illinois Rule of Professional Responsibility makes this incumbent on every attorney to follow this regulation anyway. And it's, it serves a laudatory purpose for the court to do what the court did in this matter. And that's borne out by the fact that look at the other interested parties that you have here and motions on the part of DCFF. I'm sorry. Look at it another way. If there has been, as I understand it from listening to the appellant's argument, no other judge other than this one who has issued such a broad decorum order in the face of this type of media coverage, then how can it be argued that this is not an abuse of discretion? And no other judges in Cook County or Circuit Court have adopted this view and a similar issue or issued similar orders. Your Honor, perhaps I'm misunderstanding. Because it exists, therefore everybody else should follow it. I'm asking you, is it an abuse of discretion? You know, because it stands out singularly on its own and no one else has followed it. Except for the same judge himself in Cali. Your Honor, I don't know how we would know. I personally have no knowledge as to whether or not this template that this court articulated has been used by other courts. And I frankly don't know how anyone would be able to answer that question, short of the issue being raised on appeal. And frankly, why would the issue be raised on appeal? It already has been raised on appeal and this specific court addressed it in the R. Kelly case. One of our panel members here wrote it. There's your template. It's already been approved. Whether or not an individual Circuit Court judge is following it or not is a different question and I'm not sure that it's all that relevant. Your Honor, I would agree. Once this court issued that decision, it cannot be an abuse of discretion for a Circuit Court judge to follow what the appellate court has told it is sanctioned and is proper. So the question becomes, and as I understand it, Your Honor, when counsel was having the conversation with you about whether or not there are any other cases, I think that she was trying to get to the question of whether or not there are any other cases where a decorum order has been maintained post-trial. I think that I understand that to have been the point that she was trying to make. And she talks about this being an egregious act. Well, it is hard to see how that complaint can be waged given the fact that if these are the sophisticated First Amendment attorneys out there who are in the courtroom, who are monitoring what's going on, who understand and appreciate how to properly interpose an objection to something that they think is wrong. And that is not what they did. And this brings me to my argument about litigants that come before the court who are subject to a complaint by the opposing side that you didn't do what you needed to do. So it's a forfeiture. Here, it's a standing argument that I'm making. This is as far from if you have a pro se post-conviction petitioner at one end of the spectrum who is not schooled in what he needs to do to raise a constitutional claim, we're way at the other end here. We are talking about people who know what they are supposed to do, who are present in the courtroom, watching and monitoring each and every day what Judge Gawne is doing. Yet they did nothing. What they did was they chose to try to ride on the coattails of a non-party. So Brandon Smith, through his attorney, who is also a very well-versed, erudite First Amendment attorney, comes before the court on February 19th of 2019. And he asks for the court to modify, not vacate, modify the decorum order that was placed, that was put in effect by Judge Gawne. And here, I think it's worth actually quoting him because of the fact that the issue of vacating this decorum order was not raised. What Mr. Topic said, this is at Record 809, what we're proposing is that there just be a process where we go to specific documents and have you rule on would it actually be an issue of fair trial right or the ability to prosecute if certain records were released. Or if those officers even identified whether they have emails related to the Laquan McDonald case. That's as far as we're at at this point. There can be some procedure to do that. We've made a proposal for how to do that. But we're open to other ways to do it. But there must be some mechanism by which we can come before you. We'd like to have some ability to argue about it. None of the other interveners are in our position. We are the only one who has a pending freedom of information lawsuit that is in which your order has been implicated. Now, at this point, and this motion is clearly about eliminating, Justice Hall, as you were referencing, the FOIA requirements that one has to go through to access police records. And Mr. Healy, who represents that he is appearing on behalf of the other interveners, plural, says, I really don't have anything to add to Mr. Topic's arguments. As I understand, what they're really seeking is a mechanism, not a whole upsetting of the apple cart here, but just mechanism to deal with these objections that they're dealing with. So we're in support of those. Now, their motion that they filed was not an independent motion trying to do anything. It was a motion to join in Mr. Smith, again, a non-parties motion, so that Judge Gawne looks at this thing and he says, wait a minute, wait a minute, Mr. Healy, number one, why didn't you join with Mr. Topic? And why haven't you made the FOIA request? And why haven't you basically done something to give you standing to appear before me and make a request for any sort of change to this decorum order? You haven't done it. And then there's a little discussion that happens and Judge Gawne says, you know what, I'm not dealing with what might happen in the future. I'm dealing with what's here right in front of me right now. And what he does is he refuses to allow the court to do that. And these sophisticated appellants, I mean, everyone realizes there's a problem because Smith's attorney tries to tailor an order that's going to like shore up the hole and say that somehow the intervener's motion is also denied. Well, the interveners now come back with a motion to reconsider, only it's not a motion to reconsider. It's a motion that now for the very first time, and this is only four months before the court ultimately dissolves, he lifts this decorum order for the first time under the guise of a motion to reconsider. The appellants come back before Judge Gawne and they say, you know what, we want it lifted. That is not, as this reconsider. A motion to reconsider only allows a party to argue changes in law, errors in the application of an existing law or newly discovered evidence that was unavailable previously. And that is not what the appellants did. For all of those reasons, the people are urging this court because there's a need to follow the rules. This isn't about avoiding the issue. I'm going to turn to the substantive challenge and discuss what precisely was done. But the problem is that when you're a sophisticated litigant and you are representing the media and you are representing the fundamental first amendment rights of the people to know, and that's a serious, heavy burden to carry. And you know enough to go to the Illinois Supreme Court and complain about what you think is unfair. Yet you never raise the decorum order and you never come in after trial, after sentence, and bother to file your own pleading alleging that there is something, some way in which you are being harmed. You should not be in a position to seek substantive review from a court of appeal. That's the people's position. But if we turn to the facts and put aside the question of whether or not you should reach the issue, let's reach the issue. The court lifted the order a mere four months after the defense got around to, I'm sorry, the appellants got around to actually asking that it be lifted. And there's a question that's raised now by my opponent as to whether or not the court had jurisdiction to do that. And the people maintain that not only did the court's issuance of the order lifting the decorum order make that issue move, but that the court had authority to do that because trial courts maintain the authority to, the inherent authority to modify or dissolve injunctions, which is what technically this is. They can do that if circumstances change. Now, there's a suggestion here that the only thing that changed is the filing of the notice of appeal and that the filing of the notice of appeal prevented the court from doing that. I have asked this court, if that's the case, then why wasn't the court without jurisdiction to do anything as soon as Van Dyke filed his notice of appeal? And if that's the case, then there's no jurisdiction for any of us to even be having this conversation. That's not the way that the state understands the law to operate. There's a change of position because at this point, something that hadn't happened previously, and I agree with my opposing counsel, we had objected to Smith intervening and to the modification that he sought because we thought it did an end run around FOIA. But at this point, the state's attorney came before the judge with a formal motion saying, your honor, you know what? Yes, there are these outstanding concerns. One of them being the fact that the case is on appeal. Now, I understand there's no case law in Illinois on this one way or the other, but again, we're talking about discretion and abusive discretion. And how can it be said that it's an abusive discretion for the court to hear a properly brought motion, which by the way, there's another change at this point. There has been a change in the mayor of the city of Chicago and the position that's being taken by the court counsel as to whether or not they want to fight these FOIA requests anymore. And Natalia Delgado is on record for the first time, this isn't in this record up until this point, agreeing, you know what? This would be a good idea. Let's lift this. This is in everybody's best interest. So for those reasons, the people would maintain that Judge Kahn absolutely properly exercised his discretion with respect to the decorum order. This brings me to the sealed documents. Now, again, this is a sophisticated litigant representing the first amendment rights of the people. And this was something that they brought the question of the propriety of the unsealing. Is there still a perceived or actual threat that the unsealing of the seven filings would become a vehicle for improper purpose? I'm sorry, your honor. I'm having a little bit of trouble hearing you. I don't know what's wrong with my mic. I said at this point, can you Yes, your honor. Here is the problem with unsealing those documents. Because counsel says, well, we don't know. We don't know what's in them. I have no idea what's in them. Well, you obviously know what's in them because you've all had an opportunity to read them. The people's position is and has always been that there is sanctity to the secrecy of proceedings in front of a grand jury. And every one of these items touches on that privilege. And when one looks at the philosophical underpinnings for that, we're talking about a common law of protection in both state and federal law so strong that the Illinois Supreme Court, and in looking at this, talks about the fact that federal law can even be considered in determining the extent of that privilege. And the best case, in my opinion, for looking Let me ask you this for a moment. The real issue here is these redacted documents. Yes, your honor. In these redacted documents, the special prosecutor stated on the record what was redacted. And what was redacted was reference to grand jury testimony and names and identity of witnesses who appeared before the grand jury. That's what he stated on the record. And what would remain in these documents would be the allegations that were made by the defense in the motion to dismiss. And all of the things that was redacted was explained by the special prosecutor. This court went over those documents, and that's exactly what was redacted. Well, that was exactly what was redacted. So the question is, should the media receive that information when you gave them the documents to begin with, and then you redacted certain things? Should that information be withheld from them? And did this judge do something that no other judge would do in not giving that information? That's what the major issue is in this case. And my response, your honor, is... Now you have two questions before you answer mine, please, and then answer Justice Morgan's. Unfortunately, your honor, I'm going to try to answer both of them to the best that I remember both of them, keeping both of them in my head simultaneously. In Ray, a special prosecutor, which is cited in my opponent's brief extensively, and I'm going back now to my discussion of how we can rely on federal law, even because this is such a well-established principle of law, says that anything that reveals what transpired during that grand jury, during the proceedings, is included and is not supposed to be divulged. Now, are there exceptions? Sure. A witness takes the stand and testifies and is impeached. And this is provided for in the statute, right? That if there's another law that trumps it, then you are going to have the ability to get into that. That didn't happen here. The defense is saying the mere filing of the motions in court led to a presumption that they were entitled to an exception. That can't be reconciled within Ray's special prosecutor, nor can it be remedied with the experience and logic test for First Amendment claims that are set out in Zimmerman, because the first part of that test is that the documents have to be historically open. And grand jury proceedings are historically closed. And the only exception to that, other than the exception for when a witness testifies and that testimony is introduced at trial, is a case called Carlson that involves the Espionage Act and trying to get information 70 years after that grand jury sat. And that is not, I mean, that's an outlier. That is not what this statute is designed to do. It is designed to provide sanctity to those proceedings. And the state's attorney, I mean, to be perfectly clear, did not violate. It's the people's position that that statute was not violated in any way by tendering redacted copies. And to the extent that the defendant's complaining that there's somehow the appellants, I apologize, it's habit, that the appellants are complaining that they were in the dark and have no idea what happened and they're at a loss and it's time to come forward. All they have to do is look at the transcript from December 20th of 2017, when there was a public hearing on all of this, replete with 39 slides, a slide show that was presented by Van Dyck's attorneys, supporting every one of these claims that's now in these sealed documents, as well as... No, you're way past your time. So, you know, I'll give you a couple more minutes. I'm going to close really quickly, as well as the May 24th publicly filed motion to reconsider after the supervisory order was entered that sets out everything, albeit without the testimony that's not properly out there in the public. Every claim that was made by Jason Van Dyck, including everything from Anita Alvarez's involvement before we were even in this case on down, was publicly aired, was the subject of a written pleading and is in the possession of the appellants. Judge Gawne properly exercises discretion. There's no violation of the First or the statutory right. The letter of the law as set down in People v. Kelly was followed in this case. We ask that you deny all the relief that's requested by the appellants. Thank you. Okay, let's hear the rebuttal. Wait a minute. First, is there any questions by any of the panel? Oh, none from me. Thank you. Thank you. Okay, let's hear the rebuttal. All right. Thank you, Your Honor. You can all hear me right now, correct? Yes. Thank you. Thank you. Yes, I just have three points that I would like to make. First of all, we did, in our notice of appeal, cite to rule 307 as a means for jurisdiction in this case as well. Although there was an issue raised in the response brief by the state, there was an issue because they were calculating from the wrong time, from the denial of the motion to join in Brandon Smith's motion to intervene. But we are appealing from the May 23rd order, and so it is timely under that. Number two, I would like to stress again that we have not found a case, and again, the people have not pointed us to one where a form order such as this has been maintained post-trial, after the jury has gone home. The state spent some time talking about the countervailing interests of a fair trial, but in this case, Jason Van Dyke received a fair trial. That's over and done. He received that fair trial two years ago, and so whatever those concerns are, it's different now, and we've not found that. But what gives you the impression that a decorum order doesn't, or that a decorum order ends at a certain point? Shouldn't the decorum order be in effect for an entire trial and post-trial and anything that goes thereafter? No, Your Honor. What case says that? Show me some type of law that says that that's not the case. Well, again, we haven't found cases, because I don't think that this is happening often, where there has been one that has survived and has caused these issues post-trial, but I think it's clear from the case law, such as Kemner, that the... That case has nothing to do with a decorum order that says that it ends at any point. There's no case that says that. There are cases that state what must be in place in order to justify a decorum order at all. I'm talking about a decorum order. Nowhere could I find in any state, any state, that a decorum order ends at a certain point. A decorum order is an order that is over the proceedings and anything that thereafter happens. And if it doesn't, show me a case. I don't care if it's in Alaska that says that. Is there a case that you found, counsel, that says the opposite, that a decorum order continues? I have not found any saying that it would continue at all. The state, for example, in its response brief, had cited to the U.S. versus Kubriti, which was, I believe, an Eastern District of Michigan case. It was a federal case that was not in Illinois. And that case, very, very briefly, during the pendency of a motion for a new trial, that that court made a point of saying it was intent, that it was substantially considering, or that it was seriously considering this motion for a new trial in that brief window of time while that was pending. There was a gag order that was permitted in place. And that was also, it needs to be noted, was a case that involved national security concerns. These were classified documents that were at issue in that case. And also, there were other defendants in other proceedings that were going on who had not yet reached trial, and the material could damage them as well. That is the closest we have found for anything after the fact. And again, the court took great pains, and this is a case cited by the people, took great pains to note exactly the basis, again, in those very, very narrow, narrow circumstances. So I think that the general guidance that we've received under quorum orders from this court and from the Illinois Supreme Court and Kemner and R. Kelly, I think that general guidance shows that whatever the concerns were is not present here. And if I could make one more point as well, because I know I'm running out of time here, on the grand jury materials. The, my big question remains, why would the state release some of the grand jury materials if the position of the state is that these materials are so sacrosanct that we cannot reveal them under any circumstances? I have to wonder, you know, this is a description here on supplemental record C-37. Everything that is showing here are things that happened at the grand jury, and yet the state made the decision to propose only the redactions that are here and to not do the rest. Again, I'm at C-114 here. This is a portion that they chose to show, so it is not a consistent position that under no circumstances may the public see it, and I think we need to see it here. Again, I would direct you, I won't hold them all up, but I'll direct you to the record at 118 and of the video that the grand jury was watching and what was being said around it. And finally, one last point that connects to that, I wanted to point out as well that if, that to the extent that the state is saying that we've received enough, that just begs the question, what remains? What necessity, what higher interest remains to justify not giving the public the rest? And with that, unless there are any other questions, that's what I have today.  Is there any questions for any panel members? No. No, I have no questions, thank you. Okay, I have none either, but I would like to say that this is a very interesting case. The lawyers did a terrific job and gave very good oral arguments, and we certainly thank you for that. And with that, the court will be adjourned, but I ask my panel members to remain.